JOSEPH M. RANSOM, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ransom v. Commissioner
Docket Nos. 13257-86, 31016-86
United States Tax Court
T.C. Memo 1990-381; 1990 Tax Ct. Memo LEXIS 399; 60 T.C.M. (CCH) 229; T.C.M. (RIA) 90381; July 24, 1990, Filed *399 Decisions will be entered under Rule 155. Richard M. Rodriguez-Ivanhoe, for the petitioner. Ann Marie Murphy, for the respondent. JACOBS, Judge. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION In these consolidated cases, respondent determined deficiencies in petitioner's Federal income taxes for 1983 and 1984 in the amounts of $ 3,919.00 and $ 3,621.41, respectively. He also determined an addition to tax, pursuant to section 6651(a)(1), [1] in the amount of $ 303 for 1983, which he subsequently conceded. Respondent filed an amendment to his answer alleging an increase of $ 809 in the deficiency for 1984, resulting in a total deficiency of $ 4,430.41 for that year. After concessions by both parties, the remaining issues for decision are: (1) whether petitioner's Amway distribution activities constituted an activity not engaged in for profit within the meaning of section 183; (2) what amounts, if any, petitioner is entitled to deduct in 1983 and 1984 for business expenses and for depreciation; *400 and (3) whether petitioner is entitled to a business (investment) credit in the amount of $ 809 for 1984. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. At the time he filed his petitions in these cases, petitioner resided in San Mateo, California. During 1983 and 1984, petitioner was employed full-time by Pacific Telephone and Telegraph Company. He received wages from such employment in the amounts of $ 31,651.32 and $ 37,070.71, respectively, during 1983 and 1984. He worked evenings and weekends as an Amway distributor. Amway is a supplier of various products, which uses a direct marketing concept to promote sales of its products. It is based on a "pyramid" incentive system whereby a distributor's increased sales are rewarded by bonus checks. In addition to sales to consumers, distributors could increase their sales by recruiting others to sell the products. If the recruit of one distributor recruited another distributor, the sales of the new distributor would also benefit the original distributor. Petitioner was introduced to the Amway's direct marketing *401 sales technique by a friend, Paul Kent (Kent), sometime in 1981 or 1982. Kent informed petitioner that there was "an unlimited opportunity in direct marketing" of Amway products. Kent also explained certain tax benefits of being an Amway distributor. Petitioner attended several meetings regarding Amway's direct sales techniques with Kent and was impressed with the profit potential associated with being an Amway distributor. He therefore became a down-line distributor of Kent's. Petitioner's first Amway sales were in 1982. Subsequent to the years in issue, he engaged in selling Herbalife and Life Force products in addition to his Amway activity. Petitioner sold Amway products in a geographical area ranging from San Jose to Sacramento (at the time petitioner lived in Pacifica). Petitioner had between 75 and 100 customers. When he delivered products to his customers, petitioner attempted to recruit them as his down-line distributors; however, he was unsuccessful. Petitioner included Schedules C (on which he reported income and losses from his Amway activities) with his 1983 and 1984 tax returns. On those schedules, petitioner listed gross receipts of $ 981 for 1983, and $ 867 for *402 1984, and claimed expenses as follows: 1983
1984
Advertising
$    125
$     16 Bank Service Charges
80
110 Business Gifts & Incentives
590
303 Car and Truck Expenses
4,597
3,116 Client Contact
1,861
979 Commissions
259
148 Continuing Education
683
1,210 "Demos. & Comp."
1,561
1,286 Depreciation
1,301
3,534 Dues and Publications
148
81 "Field Accomod."
1,081
-- Freight
52
125 Interest on Business Indebtedness
264
-- Laundry and Cleaning
250
46 Legal and Professional
1,454
1,100 Miscellaneous
150
150 Office Expense
281
86 Promotion
1,007
1,157 Rent on Business Property
981
-- Repairs
310
-- Security
1,768
382 Supplies
43
499 Travel and Entertainment
2,869
482 Utilities and Telephone [2]
1,473
1,710 Wages
-- 780 Total
$ 23,188
$ 17,300 Thus, for 1983, petitioner's Amway activities resulted in a $ 22,207 loss ($ 23,188 - $ 981), and for 1984, a $ 16,433 loss ($ 17,300 - $ 867). In 1985, his Amway activities resulted in a net loss of $ 23,254. Petitioner did not know whether his Amway activities for 1986 and 1987 resulted in a profit or loss. During the years in issue, petitioner resided with Christine Soria (Ms. Soria), to *403 whom he was married at the time of trial. Petitioner deducted as wages amounts he paid to her. He also deducted amounts he paid to Ms. Soria's three children, who were approximately 6, 9, and 12 years old in 1983, for cleaning his residence, washing his car, and cleaning up after his "guard dog." Further, he claimed as deductible business gifts a baseball glove, pants, and a blouse which he gave to Ms. Soria's children. On brief, petitioner conceded that these "wage" and "business gift" expenses were nondeductible personal expenses. In 1983, petitioner deducted $ 1,454 as legal and professional expenses. He paid Ms. Soria's brother this amount to assist him with accounting and clerical work. Petitioner claimed a deduction for bank charges which he incurred when the balance in his checking account dropped below a certain level. The account was used for both his personal and Amway-related expenses. Although petitioner maintained an inventory of approximately $ 300, he claimed deductions of $ 1,768 and $ 382, respectively, during 1983 and 1984 for "security." He subsequently conceded that these were nondeductible personal expenses. Petitioner claimed depreciation for a stereo system *404 and a vacuum cleaner. The stereo system was an Amway product which he used for background music at meetings he held in his home. Petitioner's claimed deduction for continuing education consisted of amounts he spent for new Amway products which he personally tried or gave away to his clients and potential clients. Finally, in 1984, in an attempt to secure a commercial account, petitioner sold products to an automobile body shop owner at cost and then gave the owner an additional $ 148 as a "commission," resulting in a loss to petitioner. Respondent disallowed $ 15,877 of petitioner's Schedule C expenses for 1983 and the entire $ 17,300 of his Schedule C expenses for 1984. In his notice of deficiency, in recomputing petitioner's 1984 tax liability, respondent allowed $ 809 as a general business credit. Respondent now contends petitioner is not entitled to the $ 809 credit; respondent seeks to increase the deficiency claimed to be due from petitioner (through the amendment to his answer) in a like amount. OPINION The primary issue herein concerns petitioner's entitlement to claimed deductions for expenses relating to his Amway activities. Such expenses may be deducted only if petitioner *405 proves that they were incurred in carrying on a trade or business or were incurred for the production of income. Sections 162[3] and 212. [4] Certain limited deductions are also available with respect to activities "not engaged in for profit," which is defined in section 183(c) as an activity other than one with respect to which deductions are allowable under section 162 or under paragraphs (1) or (2) of section 212. [5] *406 However, section 262 precludes the deduction of personal, living or family expenses. Respondent does not question the fact that petitioner incurred the expenses at issue; he contends, however, that petitioner did not engage in his Amway distribution activities with the requisite profit objective. Although petitioner need not prove that his expectation of profit was reasonable, he must establish that he had an honest and actual objective of making a profit. Section 1.183-2(a), Income Tax Regs.; *407 Beck v. Commissioner, 85 T.C. 557, 569 (1985); Flowers v. Commissioner, 80 T.C. 914, 931 (1983); Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). In this context, "profit" means an economic profit independent of tax savings. Estate of Baron v. Commissioner, 83 T.C. 542, 557-559 (1984), affd. 798 F.2d 65 (2d Cir. 1986). Whether petitioner engaged in his Amway activity with the requisite profit objective is a question of fact to be resolved on the basis of all the facts and circumstances. Finoli v. Commissioner, 86 T.C. 697, 722 (1986); Beck v. Commissioner, supra at 570; Flowers v. Commissioner, supra at 931-932; Lemmen v. Commissioner, 77 T.C. 1326, 1340 (1981). While petitioner stated that he engaged in his Amway activity to make a profit, we give greater weight to objective factors than to his own statements of intent. Section 1.183-2(a), Income Tax Regs.; Beck v. Commissioner, supra; Flowers v. Commissioner, supra; Siegel v. Commissioner, 78 T.C. 659, 699 (1982). Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of nine objective factors relevant to the determination of whether an activity is engaged *408 in for profit. The nine factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. Section 1.183-2(b), Income Tax Regs. No single factor is controlling, but rather it is an evaluation of all the facts and circumstances in the case, taken as a whole, which is determinative. Section 1.183-2(b), Income Tax Regs.; Abramson v. Commissioner, 86 T.C. 360, 371 (1986). Based upon our consideration of the record as a whole, we conclude that petitioner did not engage in his Amway activity with the requisite profit objective. Petitioner failed to carry on his Amway distribution activities in a businesslike manner. Although he maintained *409 records with respect to his activities, he did not maintain a separate checking account. Nonetheless, on his income tax returns, petitioner allocated the entire amount of bank service charges to the Amway activity. He also deducted gifts he gave to Ms. Soria's children; deducted, as wages, amounts he paid them for cleaning his residence, washing his car, and cleaning up after his dog; and paid "commissions" to an automobile body shop owner, which resulted in petitioner's losing money on the sales. He also deducted accounting fees in the amount of $ 1,454 for payments made to Ms. Soria's brother, an amount nearly one and one-half times the gross income generated by the Amway activity for that year. In 1983, he deducted nearly six times the amount of his inventory for "security" to protect that inventory. Petitioner appears to have made no attempt to cut his costs, despite both the continuing losses he suffered from his Amway distribution activities and the lack of success he had in recruiting others to distribute the products. He failed to present any credible evidence of having projected what would be necessary to make a profit in his Amway activity. A further indication of the *410 unbusinesslike manner in which petitioner conducted his Amway activity was the thin, or in some cases, nonexistent, line dividing his personal activities from his business activities. In addition to deducting such personal expenses as gifts to his present wife's children and amounts he paid them, petitioner deducted "client contact" and entertainment expenses in amounts nearly five times his gross income from his Amway activity in 1983 and over one and one-half times such income in 1984. Included in such expenses for 1984 was $ 488 for a "barbecue." Petitioner offered little evidence that his Amway activity required him to do anything other than to maintain an active social life. He presented little evidence of having attended seminars or educational meetings other than those he attended prior to becoming involved in the Amway activity. Most of his Amway activity appears to have involved taking friends to restaurants and having parties. In addition, petitioner had no success in recruiting down-line distributors and limited success in selling Amway products. While petitioner contends that he amassed between 75 and 100 customers, his level of sales indicates that each of these customers *411 bought only very limited quantities of Amway's products from him. A further factor is petitioner's level of income from other sources. If a taxpayer has substantial income from sources other than the activity in question, it is an indication that the activity is not engaged in for profit, particularly if the losses from the activity generate substantial tax benefits. Section 1.183-2(b)(8), Income Tax Regs.
Petitioner had full-time employment with the telephone company. Through such employment petitioner earned $ 31,651 in 1983 and $ 37,071 in 1984; by deducting expenses associated with his Amway activity, he was able to practically eliminate the tax liability he otherwise would owe. The facts in this case are similar to those in Elliott v. Commissioner, 90 T.C. 960 (1988), affd. without published opinion 899 F.2d 18 (9th Cir. 1990), wherein this Court held that the taxpayer's Amway distribution activity was not engaged in for profit. Like the Elliotts, petitioner made slight modifications in his social life and claimed deductions for virtually everything he did. It appears that petitioner's tax philosophy is: if it moves, deduct it; if it is stationary, depreciate it. Because *412 we have found that petitioner's Amway activity was an activity "not engaged in for profit", he may deduct his Amway expenses only to the extent provided in section 183(b). [6]
The second issue is whether petitioner is entitled to a general business credit for 1984. In computing petitioner's 1984 tax liability in his notice of deficiency, respondent allowed petitioner $ 809 as a general business credit. Respondent now believes petitioner is not entitled to the credit, but he presented no evidence in this regard. Respondent first raised this issue in an amendment to his answer, accordingly, he bears the burden *413 of proof. Rule 142(a). Having failed to present any evidence with respect to this issue, respondent's claim for the $ 809 increased deficiency is denied. To reflect the foregoing and concessions by the parties, Decisions will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. On brief, petitioner conceded that 81 percent of the claimed utility expenses were nondeductible personal expenses.↩
3. Section 162 provides, in relevant part, as follows: (a) IN GENERAL. -- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *↩
4. Section 212 provides, in relevant part, as follows: In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year -- (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; * * *↩
5. Section 183 provides, in relevant part, as follows: (a) GENERAL RULE. -- In the case of an activity engaged in by an individual * * *, if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section. (b) DEDUCTIONS ALLOWABLE. -- In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed -- (1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and (2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1).↩
6. Because of an error made by respondent, the notice of deficiency for 1983 disallowed only $ 15,877 of petitioner's claimed Schedule C deductions. Petitioner, however, is entitled to deduct his expenses only to the extent of the income he received from his Amway activity, i.e., $ 981 during 1983. With respect to 1984, respondent disallowed the entire $ 17,300 of petitioner's claimed deductions. Petitioner is entitled to deduct expenses up to the amount of income he derived from the Amway activity. As such, petitioner is entitled to deductions in the amount of $ 867 in 1984.↩